**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ZLATA PETROVIC,**<br><br>                          **Plaintiff,**<br><br>      v.<br><br>**AMERICAN AIRLINES, INC.,**<br><br>                          **Defendant.** | **Case No. 13 C 246**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Leave to file a Second Amended Complaint ("SAC"). For the reasons stated herein, the Motion is denied.

**I. BACKGROUND**

Plaintiff Zlata Petrovic ("Plaintiff") brought this case after her employer, Defendant American Airlines, Inc. ("Defendant"), terminated her employment. Her five-count amended complaint alleges age, sex, and disability discrimination (Counts I-III), intentional infliction of emotional distress ("IIED") (Count IV), and breach of contract (Count V). Defendant answered Counts I-III and moved to dismiss Counts IV and V for failure to state a claim upon which relief could be granted.

In response to the Motion to Dismiss, Plaintiff filed a Motion for leave to file a Second Amended Complaint. The proposed new Complaint adds factual allegations in support of Counts IV and V.

Plaintiff's counsel advised the Court that if leave to amend is granted, Plaintiff will voluntarily dismiss Count V. Thus, only Count IV of the proposed SAC is at issue.

The facts underlying the IIED claim stem from Plaintiff's termination and Plaintiff's susceptibility to emotional distress. On or about January 1, 2012, Plaintiff requested that her supervisor allow her to upgrade a frequent-flyer passenger on Flight 86 from Chicago to London. Plaintiff upgraded the passenger to first class and provided a complimentary bottle of champagne. Plaintiff alleges that she gave the passenger the upgrade because she thought it was in Defendant's best interest, and that she did not receive any benefit from the upgrade. A few weeks later, Plaintiff was terminated for falsifying records and for theft.

Plaintiff alleges that those reasons were a pretext for discriminatory termination and that this was not the first time that Defendant had accused Plaintiff falsely of violating Defendant's rules. Previously, she had been accused of using the officers' lounge improperly. Plaintiff told her supervisor that all of those accusations were false, but in response the supervisor just laughed. Plaintiff argues that Defendant fired her without conducting a proper investigation or hearing.

Plaintiff supplements those accusations with a claim that Defendant was aware of Plaintiff's financial vulnerability. Plaintiff's husband is disabled, and thus Plaintiff needed to work

to support her husband and family. Allegedly, Defendant took the actions it did despite knowledge of Plaintiff's "domestic situation." ECF No. 30-1 at 9.

Plaintiff alleges she suffered emotional distress as a result of Defendant's conduct prior to and after her termination. She suffers from sleeplessness, depression, low self-esteem, and loss of appetite. She has been unable to look for work and no longer enjoys the company of family and friends.

## II. LEGAL STANDARD

Because more than twenty-one (21) days have elapsed since service of the original Complaint, Plaintiff may amend her complaint only with Defendant's written consent or the Court's leave. FED. R. CIV. P. 15(a)(2). Leave is given freely when justice so requires. *Id.* But a district court may deny a plaintiff leave to amend if the amendment would be futile, such as if the amended claim could not withstand a motion to dismiss. *See, Park v. City of Chicago,* 297 F.3d 606, 612 (7th Cir. 2002). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted).

## III. ANALYSIS

To state a claim for IIED, a plaintiff must plead that (1) the defendant's conduct was extreme and outrageous, (2) the defendant

intended to inflict severe emotional distress (or knew of a high probability that the conduct would cause severe emotional distress), and (3) the conduct in fact caused severe emotional distress. *Cook v. Winfrey,* 141 F.3d 322, 330 (7th Cir. 1998). Defendant argues that leave to amend should be denied because Count IV of the proposed SAC fails to allege extreme and outrageous conduct.

The standard for extreme and outrageous is "quite high." *Lewis v. Sch. Dist. #70,* 523 F.3d 730, 747 (7th Cir. 2008). For conduct to be extreme and outrageous, it must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not extreme and outrageous. *Lewis,* 523 F.3d at 746-47. Conduct is more likely to be extreme or outrageous "if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress," particularly where the defendant stands in a position of power relative to the plaintiff that "gives him actual or apparent power to damage the plaintiff's interests." *McGrath v. Fahey,* 533 N.E.2d 806, 810-11 (Ill. 1988).

Often, employee-plaintiffs alleging IIED struggle to show that the defendant-employer's conduct was extreme and outrageous. As the Illinois Appellate Court has observed, "if everyday job

stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham v. Commonwealth Edison Co.,* 742 N.E.2d 858, 867 (Ill. App. Ct. 2000).

It is well established that Plaintiff's discrimination claims, such as those in Counts I-III, cannot supply a basis for her IIED claim. *See, McKay v. Town & Country Cadillac, Inc.,* 991 F.Supp. 966, 972 (N.D. Ill. 1997) (explaining that "terminating an employee in violation of an anti-discriminatory statute, or harshly criticizing or insulting an employee, is not enough to constitute extreme and outrageous conduct"). Similarly, a mocking laugh from a supervisor is not actionable because it is no more than a mere insult or indignity. *Lewis,* 523 F.3d at 746-47.

Plaintiff argues that it was extreme and outrageous for Defendant to accuse her falsely of violating company policies. But courts hold consistently that false accusations, even as part of a larger pattern of alleged employer misconduct, are not extreme and outrageous. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir. 1993) (IIED claim dismissed where plaintiff alleged that her employer made false accusations about her job performance); *Socorro v. IMI Data Search, Inc.,* No. 02 C 8120, 2003 WL 1964269, at *5 (N.D. Ill. Apr. 28, 2003) (IIED claim dismissed where plaintiff alleged that he was fired on the basis of his employer's

false report). And if firing on the basis of false information is not actionable, it follows *a fortiori* that it is not extreme and outrageous for an employer to terminate an employee for no reason – *i.e.*, without the benefits that might be derived from an investigation or a hearing. *See, Ekekhor v. AON Serv. Corp.,* 05 C 99, 2006 WL 2349982, at *8 (N.D. Ill. Aug. 9, 2006) (dismissing IIED claim where plaintiffs alleged that their employer failed to investigate their claims adequately).

Plaintiff's final argument in support of her IIED claim is that Defendant's conduct was extreme and outrageous because Defendant "exercised total power over Plaintiff" and knew that Plaintiff was susceptible to emotional distress. ECF No. 34 at 7. As mentioned above, a defendant's knowledge of the plaintiff's susceptibility to emotional distress, as well as the defendant's control over the plaintiff, are factors that affect the "extreme and outrageous" analysis. *McGrath,* 533 N.E.2d at 810-11. But these factors are triggered only where the plaintiff's susceptibility is caused by an actual physical or mental condition. *Id.* at 812 (where the defendants had reason to believe that plaintiff might well be susceptible to heart disease, and defendants' conduct continued after plaintiff in fact had a severe heart attack); *Pavilion v. Kaferly*, 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990) (where the defendant knew that the plaintiff was undergoing psychotherapy). Precedent instructs that Plaintiff's

financial difficulties, without an underlying mental or physical impairment, are insufficient to make her more susceptible to emotional distress.

Even when all the alleged indignities are considered together, they do not state a claim for IIED. *See, e.g., Fang v. Vill. of Roselle,* 1996 WL 386556, at *4 (N.D. Ill. July 5, 1996) ("Most conduct by an employer that falls short of attempted coercion into a crime or sexual misconduct, even if such conduct is illegal, has fallen short of the 'outrageous' behavior required by caselaw."). Accordingly, Count IV of the proposed SAC fails to state a claim for IIED, so amending the current complaint would be futile.

## IV. CONCLUSION

For the reasons stated herein, the Plaintiff's Motion to Amend [ECF No. 30] is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date:2/21/2014